

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: January 19, 2018.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 17-50913-CAG |
| | § | |
| BELLA LOGISTICS LLC, | § | CHAPTER 7 |
| | § | |
| Debtor. | § | |

### ORDER GRANTING SECOND APPLICATION BY CALDWELL-BAKER COMPANY FOR ALLOWANCE AND IMMEDIATE PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM AND FOR ADEQUATE PROTECTION

Came on for consideration the above-numbered case and, in particular, Second Application by Caldwell-Baker Company ("CBC") for Allowance and Immediate Payment of Administrative Expense Claim and for Adequate Protection (the "Application") (ECF No. 41).[1] The Chapter 7 Trustee ("Trustee") filed a Response in opposition to the Application on July 28, 2017 (the "Response") (ECF No. 60). The Trustee also filed his Brief in Support of Response on December 4, 2017 (ECF No. 105). The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C.

---

[1] Unless otherwise noted, "ECF" refers to the electronic case filing in the bankruptcy case.

1

§ 157(b)(2)(B) (allowance or disallowance of claims against the estate). Venue is proper under 28 U.S.C. §§ 1408(1) and 1409(a). This matter is referred to this Court under the District Court's Order of Reference. For the reasons stated in this Order, the Court finds that CBC's Application is GRANTED, but its chapter 11 administrative claims are subordinated to all chapter 7 administrative expense claims.

## PROCEDURAL BACKGROUND

Debtor filed its chapter 11 petition for relief on April 19, 2017. (ECF No. 1). Debtor's Schedules and Statement of Financial Affairs were filed on May 8, 2017. Debtor's Schedules indicate cash of $2,494.91, inventory consisting of frack sand with a stated value of $75,144.80, furniture and equipment with a stated value of $17,111.47, and two accounts receivables totaling $3,328,031.02. One of the accounts receivables is $3,304,350.11.[2] Debtor's counsel advised the Court that the large receivable is from an entity that is also in chapter 11 bankruptcy. Debtor has scheduled liabilities of $7,321,108.74. Notably, Debtor listed in its Schedule G (Executory Contracts and Unexpired Leases) that it intends to assume its executory contract for a rail car lease with CBC. Debtor was in the business of selling frack sand to end users and leased railway cars to transport frack sand to its buyers. Like other similarly situated companies that were dependent on fracking activities in South Texas, when the price of oil dropped precipitously over the past few years, drilling activity ceased and vendors like Debtor could no longer sell its products to oil and gas companies. Debtor's Statement of Financial Affairs—Part 1—indicates that the Debtor had gross revenues in 2015 of $10.4 million; 2016 of $10.7 million; and revenues of $9,405.00 for

---

[2] As explained in the Trustee's Motion for Authority to Consent to the Disallowance of the Estate's Claim in the Breitburn Energy Partners LP Chapter 11 Case (pending in the Bankruptcy Court for the S.D.N.Y.), the Estate's proof of claim in that case is being contested (ECF No. 111). Further, Trustee has been unable to engage counsel to represent Trustee in that case. Moreover, Trustee believes that the distribution on the Estate's proof of claim in that case would be no more than 4.5%. As such, Trustee believes that the Estate's proof of claim in that case has no value.

2017 through date of petition.

CBC filed its Application for Allowance and Immediate Payment of Administrative Expense Claim (ECF No. 30) on May 30, 2017. The Application requested an administrative expense claim for the leasing and use of CBC's railway cars for the period from date of petition (April 19, 2017) through May 1, 2017. (ECF No. 30, ¶ 9). CBC asserted that it was entitled to be compensated for the rental fee per railway car of $600.00 per month, plus a fee for each car carrying tonnage, and a fee for sub-leasing the railway cars. (ECF No. 30, ¶¶ 4–8). CBC requested an allowed administrative expense claim of $89,640.00. (*Id*.). Debtor filed its Response on June 20, 2017 (ECF No. 33), generally denying the allegations of CBC's application and asserting a right to offset the amounts due.

Prior to the Court's hearing CBC's Application for Allowance and Immediate Payment of Administrative Expense Claim (ECF No. 30), the United States Trustee filed her Motion to Convert Case to Chapter 7 on July 7, 2017 (ECF No. 39). CBC filed the instant Application on the same day. On July 12, 2017, the Court granted CBC's Application for Allowance and Immediate Payment of Administrative Expense Claim and the Court signed an order approving CBC's Application and granting CBC an administrative expense claim for $89,640.00 for the period of April 19, 2017, through May 1, 2017. The Court also considered the United States Trustee's Motion to Convert Case to Chapter 7 on July 12, 2017, and granted the Motion converting the Debtor's case to chapter 7 on July 18, 2017. (ECF No. 47).

Trustee filed his Motion to Reject Rail Car Lease Agreement on July 21, 2017. (ECF No. 52). The Motion requested, *inter alia*, to reject the Lease Agreement with CBC. Trustee then filed his Response to Second Application by Caldwell-Baker Company ("CBC") for Allowance and Immediate Payment of Administrative Expense Claim and for Adequate Protection on July 28,

3

2017. (ECF No. 60). The Court granted Trustee's Motion to Reject Rail Car Lease Agreement, including the rail car lease with CBC, on August 2, 2017. (ECF No. 62).

Thereafter, Trustee filed his Motion to Enforce Order Converting Case to a Chapter 7 Case, asking that Debtor's counsel file a schedule of unpaid debt or a final report and account. (ECF No. 73).[3] Debtor filed its Schedule of Unpaid Debts on October 13, 2017, listing debts that were incurred between chapter 11 petition date and the date of conversion. (ECF No. 80). There is no indication of any debt owing to CBC during that period notwithstanding the Court's Order allowing an administrative expense claim to CBC. Debtor also filed its Final Report as Debtor in Possession that also indicated no post-petition claim for CBC. (ECF No. 81).

## PARTIES' CONTENTIONS

CBC's Application seeks the following monetary relief:

(i) pursuant to section 365(d)(5) of the Bankruptcy Code, compelling the Debtor to immediately pay in full all obligations that accrued under the Lease Agreement first arising sixty days after the Petition Date (the "Post 60-Day Period") including to July 31, 2017, and requiring the Debtors to perform all obligations arising under the Lease Agreement during this period;

(ii) allowing an administrative expense pursuant to 11 U.S.C. § 503(b) in favor of Caldwell-Baker with respect to all obligation[s] that accrued under the Lease Agreement for the period from Petition Date through the sixty days thereafter (the "60-Day Period").

(ECF No. 41, p. 3).

CBC argues that under 11 U.S.C. § 365(d)(5)[4], a debtor or a trustee must perform all obligations under an unexpired lease until such lease is assumed or rejected. CBC argues that because its lease with Debtor has not expired (at the time of the filing of the Second Application), and that Debtor has not returned any of CBC's leased rail cars, that Trustee must compensate CBC

---

[3] The Motion was dismissed as moot once the Debtor complied with Trustee's Motion to Enforce Order Converting Case to a Chapter 7 Case. (ECF No. 100).
[4] All references herein unless specifically noted otherwise are to Title 11 U.S.C. *et seq.*

4

for the "Post 60-Day Period"— the unpaid lease amounts for that period. CBC asserts that Trustee is obligated to compensate CBC for the lost rental income over this time period and that CBC does not need to prove the requirements of § 503(b)(1),[5] by demonstrating that the railway lease benefitted the estate. Stated differently, CBC asserts that its unpaid rent over the "Post 60-Day Period" is an automatic administrative expense claim for rental obligations and that CBC does not have to show how the railway lease benefitted the estate.

In the alternative, CBC argues that under § 503(b)(1)(A), Debtor's use or leasing of the railway cars to a sub-lessee qualifies as an administrative expense claim because CBC's railway cars provided "actual, necessary costs and expenses of preserving the estate." Further, CBC maintains that if a debtor continues to receive benefits from the other party to an executory contract pending a decision to assume or reject the executory contract, then the party should be required to pay the reasonable value of those services.

Trustee filed a Response to CBC's Application in the form of a general denial of CBC's claims (ECF No. 60). In the Trustee's Brief in Support of Trustee's Response, Trustee argues that once a case is converted to chapter 7, the post-petition rentals due under that rail car agreement (from chapter 11 petition date through conversion date) become pre-petition claims in the chapter 7 estate under § 348(d). As such, CBC's request that it has an allowed administrative expense claim is incorrect because its claims are no longer administrative claims, but rather pre-petition unsecured claims in Debtor's chapter 7 estate.

As to the July 2017 lease payment, Trustee argues that under the "billing theory" (the date on which payment under the lease is due) determines when a claim for administrative expense is

---

[5] "(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—(1)(A) the actual, necessary costs and expenses of preserving the estate …."

5

incurred. The CBC lease with Debtor required Debtor to make lease payments on the first of each month; therefore, the July lease payment was due on July 1, 2017. Under the "billing theory" analysis, the July lease payment would be an administrative claim in the chapter 11 case. When the case was converted to chapter 7 on July 18, 2017, however, the July lease payment remained a chapter 11 expense claim that could then be treated as a pre-petition claim in the chapter 7 claim.

## DISCUSSION

CBC's request for an administrative expense claim under § 365(d)(5) requires the Court to conduct a statutory analysis of competing provisions of the Code. The Court must determine if CBC has a chapter 11 administrative expense claim, and, if so, is CBC's administrative claim subordinated to all chapter 7 administrative expense claims?

Section 365(d)(3) states that:

(3) The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60-day period. This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsection (b) or (f) of this section. Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

Section 365(d)(5) states that:

(5) The trustee shall timely perform all of the obligations of the debtor, except those specified in section 365(b)(2), first arising from or after 60 days after the order for relief in a case under chapter 11 of this title under an unexpired lease of personal property (other than personal property leased to an individual primarily for personal, family, or household purposes), until such lease is assumed or rejected notwithstanding section 503(b)(1) of this title, unless the court, after notice and a hearing and based on the equities of the case, orders otherwise with respect to the obligations or timely performance thereof. This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsection (b) or (f). Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

6

Section 348(d) states that:

(d) A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112, 1208, or 1307 of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.

Trustee notes that CBC filed its proof of claim (Claim No. 7-1) in the total amount of $9,479,232.00. This includes the amount requested in CBC's Application of $636,559.39. The railcar lease is attached to the proof of claim. Paragraph 4(a) provides that "Lessee shall pay rent monthly in advance on the first day of each month without any deduction recoupment, setoff abatement, or alleged over-payment whatsoever."

Trustee argues that under § 348(d) that CBC's post-petition rentals (asserted as an administrative expense claim) became pre-petition claims upon Debtor's case being converted to chapter 7. In the alternative, Trustee submits that § 726(b)[6] provides that in a case filed under chapter 11, but later converted to chapter 7, that administrative expenses in a chapter 11 case are subordinated to administrative expenses in the chapter 7 case. As such, under the "billing theory", rental payments due under the rail car lease for July 2017 were due on July 1, 2017. Therefore, if CBC's claim is an administrative expense in the chapter 11 case, CBC's claim became subordinated under § 726(a) when the case was converted to chapter 7 on July 18, 2017.

The bankruptcy court for the Southern District of Texas considered this issue in *In re Simbaki*, 2015 WL 1593888 (Bankr. S.D. Tex. April 6, 2015). In *Simbaki*, the parties agreed that

---

[6] (b) Payment on claims of a kind specified in paragraph (1), (2), (3), (4), (5), (6), (7), (8), (9), or (10) of section 507(a) of this title, or in paragraph (2), (3), (4), or (5) of subsection (a) of this section, shall be made pro rata among claims of the kind specified in each such particular paragraph, except that in a case that has been converted to this chapter under section 1112, 1208, or 1307 of this title, a claim allowed under section 503(b) of this title incurred under this chapter after such conversion has priority over a claim allowed under section 503(b) of this title incurred under any other chapter of this title or under this chapter before such conversion and over any expenses of a custodian superseded under section 543 of this title.

7

the lease payment was due on the first day of the month. *Id*. at *1. The debtor moved to assume the lease, but before the court approved the motion, the U.S. Trustee moved to convert the case to chapter 7. *Id*. When the debtor was unable to file and confirm a chapter 11 plan, the court converted the case to chapter 7. *Id*. After appointment of a chapter 7 trustee, the lessor requested that the lease payment that was due on the first of the month before conversion to chapter 7 be paid as a chapter 11 administrative expense claim. *Id*. The court had to decide how the lease payment should be treated: was it an administrative expense claim in the chapter 11 or a pre-petition claim in the chapter 7 case?

> The court summarized the interplay of §§ 365(d), 503(b)(1), and 348(d) as follows:
>
> Prior to the enactment of § 365(d)(3), if a debtor failed to make payments under a commercial lease, the landlord's remedy was to assert an administrative claim under § 503(b)(1)(A). *In re Imperial Beverage Group, LLC,* 457 B.R. 490, 497 (Bankr.N.D.Tex.2011). However, this section only compensates for "the actual, necessary costs and expenses of preserving the estate." In practical terms, the bankruptcy estate's liability for unpaid rent was limited to the reasonable value to the estate of the actual occupancy and use of the property. *In re Braniff Airways, Inc.,* 783 F.2d 1283, 1286 (5th Cir.1986). Unlike other creditors, landlords often cannot choose to cease doing business with the debtor. Under the previous Code language, landlords potentially would not receive rent while the debtor decided to assume or reject the lease. *Imperial Beverage,* 457 B.R. at 497. To combat this perceived inequity, Congress enacted the so-called Shopping Center Amendments included as part of the 1984 Bankruptcy Amendments and Federal Judgeship Act.
>
> The 1984 amendments imposed a strict time limit on the ability of a trustee to assume or reject a lease for nonresidential real property. *In re Mr. Gatti's, Inc.,* 164 B.R. 929, 932 (Bankr.W.D.Tex.1994). Congress enacted § 365(d)(3) to "insure that the debtor-tenants [of nonresidential property] pay their rent, common area and other charges on time, pending the trustee's assumption or rejection of the lease." 130 Cong. Rec. S8891, 599 (1984) (statement of Sen. Hatch). The plain language of § 365(d)(3) is clear: the debtor-tenant must fully and timely perform its obligations under the lease. *Mr. Gatti's,* 164 B.R. at 933. The statute is silent, however, as to the precise *remedies* available to a landlord whose tenant ignores § 365(d)(3) and fails to pay post-petition rent.
>
> *Id*. at *2.[7]

---

[7] Although ***Simbaki*** involved an administrative expense claim under §365(d)(3), the Court finds it analysis applicable to a claim under § 365(d)(5).

8

The *Simbaki* noted that there are at least three approaches in interpreting § 365(d)(3) in this context. *Id.* at *3. Collier's defines the majority position as interpreting § 365(d)(3) as granting the lessor automatic administrative expense treatment, independent of § 503(b)(1), for the amount called for under the lease. *Id*. (citing Alan N. Resnick & Henry J. Sommer, 3 *Collier on Bankruptcy* §365.04[1][b] (16th ed. 2011)). Collier's states that the lessor need not prove a benefit to the estate because the statute has already granted a priority payment status to the full amount of the rent. *Id*. (citations omitted).

The *Simbaki* court found that a substantial minority of courts hold that § 365(d)(3) requires the debtor to pay rent, but if it fails to do so, the landlord must assert an administrative expense claim under § 503(b)(1). *Id*. (citation omitted). *Simbaki* cited the Ninth Circuit B.A.P. opinion in *In re Orvco*, where the court held that "by not specifying the remedies available to landlords, Congress intended to give bankruptcy courts broad discretion to decide the consequences of a § 365(d)(3) breach." *Id*. (citing 95 B.R. 724, 726 (9th Cir. B.A.P. 1989) (internal citation omitted)). This Court, in *In re Mr. Gatti's, Inc.*, 164 B.R. 929, 946–47 (Bankr. W.D. Tex. 1994) reached a similar conclusion. As such, a court could fashion remedies that might include full payment of the rent due, termination of the lease, or no consequences at all. *Id*. (citations omitted).

The third approach is discussed in the Fourth Circuit's opinion in *In re Midway Airlines Corp.*, 406 F.3d 229 (4th Cir. 2005). The *Midway Airlines* court determined that the minority and majority positions are flawed. *Id*. To begin with, the Fourth Circuit determined that the minority view contravenes the plain language of § 365(d)(3), which entitles landlords to receive pre-rejection rent notwithstanding § 503(b)(1). *Id*. (citing *Midway Airlines*, 406 F.3d at 236–7). Moreover, the *Simbaki* court agreed with the Fourth Circuit in finding that the minority position

9

limits the landlord's recovery to the reasonable value to the estate for the actual use of the property, which was the problem Congress intended to fix by enacting §365(d)(3). *Id*.

The *Simbaki* court then noted that the problem with the majority position is the same as identified in the case at bar: what happens to a §365(d)(3) claim when a case is converted from chapter 11 to chapter 7? The *Simbaki* court observed that post-petition, pre-conversion claims lose their priority over post-petition, post-conversion claims. *Id*. at *4. That said, §503(b)(1) claims are exempted from this general rule. *Id*. As such, the end result would be that if "post-petition rent only arose as an independent § 365(d)(3) claim, not a § 503(b) claim, 'after the conversion a [§ 365(d)(3)] claim would be equivalent in priority to pre-petition, unsecured claims but subordinated to all other post-petition § 503(b) administrative expense claims.'" *Id*. (citing *Midway,* 406 F.3d at 238). This is the position Trustee argues here.

*Simbaki* stated that the *Midway Airlines'* solution to these problems is to classify post-petition rent as an administrative expense claim under § 503(b), but not under the specific provision of § 503(b)(1)(A). *Id*. The *Simbaki* court concluded that under § 503(b), which states that "[a]fter notice and a hearing, there shall be allowed administrative expenses. . . *including*. . ." *Id*. (emphasis in original). "The use of the word 'including' indicates that the list of administrative expense claims is non-exhaustive. *Id*. In doing so, the landlord need not show that the rent provided a reasonable benefit to the estate.[8] *Id*. The Court agrees with the *Simbaki* court that the proper way to treat a landlord's claim in this situation is to treat it as a chapter 11 administrative expense.[9]

---

[8] CBC provided oral testimony and documents in support of its administrative claim. The evidence consisted of how many cars Debtor leased. Further, CBC demonstrated that the cars are tracked through a tracking device and that based on CBC's records, the cars were used by the sub-lessee because it was shown that the cars regularly moved. Further, the CBC railway lease was admitted into evidence demonstrating the monthly lease amounts and the associated costs for tonnage. Inasmuch as the Court is finding that CBC is entitled to an administrative claim as a matter of law, and, CBC does not need to demonstrate a benefit to the estate, the evidence will not be repeated here.

[9] *Accord* **In re Burival**, 613 F.3d, 810, 811–12 (8th Cir. 2010); **In re Imperial Beverage Group, LLC**, 457 B.R. at 500 (finding that *Midway Airlines* decision to treat the §365(d)(3) claim as a claim under § 503(b) avoids the problems created by the majority and minority positions).

The *Simbaki* court found that the *Midway Airlines* decision more in line with Congressional intent subject to two considerations. *Id*. at *3. First, it is unclear whether an independent §365(d)(3) administrative expense claim can be paid under the Bankruptcy Code. *Id*. "Section 507 of the Code, which sets forth the priority of payments in a bankruptcy case, gives high priority to 'administrative expenses allowed under section 503(b) of this title,' but makes no mention of claims under § 365(d)." *Id*. at *4 (citing *Midway,* 406 F.3d at 238). "Thus, even if § 365(d)(3) created an independent administrative expense claim, the Bankruptcy Code's plain language precludes the 'conclusion that [such a] claim is entitled to priority comparable to that of a § 503(b) claim." *Id.* (quoting *In re Imperial Beverage Group, LLC*, 457 B.R. at 499 (quoting *Midway,* 406 F.3d at 238)." Based on the foregoing, and to address the disconnect between a §365(d)(3) claim that could lose its priority upon conversion, the Court finds that CBC's administrative claim is allowed under §503(b).

In addition, Trustee argues that the July lease payment was due on July 1, 2017, under what courts have determined to be the "billing theory." Although the Court has found that CBC has a chapter 11 administrative expense claim, the date on which the July lease payment was incurred is instructive as to whether CBC's administrative claim for July is subordinated under § 726(a).

There is no dispute that the lease payments incurred after petition date and prior to July all arose during the pendency of the chapter 11 case. Because Debtor's case was converted on July 18, the date on which the July lease payment was incurred will determine if the July payment is a chapter 11 or chapter 7 expense claim.

The *Simbaki* court noted that, under Texas law and the Bankruptcy Code, leases are treated as installment contracts. *Id*. at *6 (citing **F.D. Stella Prods. Co. v. Scott**, 875 S.W.2d 462, 466 (Tex. App.—Austin 1994, no writ.). The *Simbaki* court held that Texas courts have found that a

11

lease is an installment contract in which a month's use of the lessor's property is set off by a month's worth of rent. *Id*. (citation omitted). As such, under a lease, "for each month's use there is a new debt apportioned as monthly rent." *Id*. (citing **F.D. Stella Prods. Co.,** 875 S.W.2d at 466). Like the lease in *Simbaki*, Debtor was required to pay CBC for each month's use. *See* **In re Oreck Corp.**, 506 B.R. 500, 506 (Bankr. M.D. Tenn. 2014) (finding that a lease with a payment due on the first of the month required payment on the first of the month in advance of the use of the property). Therefore, Debtor was required to pay CBC at the beginning of each month for the use of the rail cars.

*Simbaki* then considered how the billing theory would apply in the context of § 726(a). The court found that because the rent became due before conversion to chapter 7, the rent must be classified as a chapter 11 expense claim subject to subordination under § 726(a). *Id*. at *6. The court reached this conclusion by noting the policy consideration regarding favoring chapter 7 administrative expense claims over chapter 11 administrative expense claims so as to encourage trustees and professionals to act in the superseding case. *Id*. at *4 (citing **In re Codesco, Inc.**, 18 B.R. 225, 227 (Bankr. S.D.N.Y. 1982)). *Simbaki* stated that this purpose would be negated if administrative expenses from the failed chapter 11 case were give a super-priority status. *Id*. Other courts have adopted this reasoning. In *Midway Airlines*, the Fourth Circuit held that:

> Because there is no provision that entitles this type of § 503(b) administrative expense claim to any superpriority over other pre-conversion § 503(b) claims, it is payable to the same extent as any other pre-conversion administrative expense under § 503(b). *See Thomas Corp. v. Nicholas,* 221 F.2d 286, 289 (5th Cir.1955) ("[I]f funds are insufficient to pay all [administrative expenses] they must individually suffer pro rata." (internal quotation marks and citation omitted)). Further, when a case is converted to chapter 7, a pre-conversion § 503(b) administrative expense claim is explicitly subordinated to a post-conversion § 503(b) claim. *See* 11 U.S.C. § 726(b). We simply join the "large number of cases [that] require[ ] the lessor to stand in line with other [administrative expense] claimants." *In re Joseph C. Spiess Co.,* 145 B.R. 597, 607-08 (Bankr.N.D.Ill.1992). It is not clear from the record whether the estate in this case is administratively

12

insolvent. If it is, then CIT must bear its proportional burden along with the other pre-conversion administrative expense claimants. Further, because this case has been converted to chapter 7, CIT's allowance, like all pre-conversion administrative expenses allowed under § 503(b), is subordinated to post-conversion administrative expenses allowed under § 503(b). *See* 11 U.S.C. § 726(b).

406 F.3d at 241–42.

The Court finds that CBC's claim for the period from petition date through conversion of the case on July 18, 2017, should be classified as a chapter 11 administrative expense claim and is allowed as filed. *See* Claims Register—Claim 7-1. Upon conversion to chapter 7, however, CBC's administrative expense claim is subordinated to all chapter 7 administrative claims pursuant to § 726(a).

### CONCLUSION

IT IS ORDERED that CBC's Application is GRANTED and that CBC has an allowed chapter 11 administrative claim. The Court further finds that under § 726(a), that CBC's chapter 11 administrative expense claim, along with any other chapter 11 administrative expense claims, are subordinated to any chapter 7 administrative claims. It is further

ORDERED, that all other relief not specifically granted herein is DENIED.

###

13